## M. M. STOKES ET AL. *v*. PAYNE, KENNEDY & Co.

POWER. *To sell land. Mortgage thereunder, whether authorized.*

Mrs. A. S., by her last will and testament, devised her land to her children, and conferred upon her husband, M. S., a power in these words: "And I hereby authorize and empower said M. S. to sell and dispose of any of the property bequeathed in this will, when it shall appear to him to be advisable so to do, having an eye to the support and education of the children." Some time after the death of the testatrix, M. S. mortgaged the land to obtain necessaries for the support of the children, and the same were furnished upon the faith of the mortgage. The debt for these necessaries not having been paid at maturity, the mortgagees filed a bill in chancery to enforce payment thereof by a foreclosure of the mortgage. A decree was rendered in favor of the complainants, and the defendants appealed. *Held*, that the language conferring the power on M. S. simply authorized the conversion of the property into money, and did not authorize him to mortgage it; and, as a general rule in this State, a power to sell will not be construed to include the power to mortgage.

APPEAL from the Chancery Court of Leake County.

Hon. T. B. GRAHAM, Chancellor.

The case is sufficiently stated in the opinion of the court.

*Raymond Reid*, for the appellants.

1. The power of M. M. Stokes, as executor, over the estate devised must be determined by the intent of the testatrix. That intent is to be inferred from the language of the will and the facts shown in the case.

The testratrix devised the land immediately to her children, for their benefit, and gave her husband the power to dispose of it for the education and maintenance of the children, when he thought it advisable. His power of sale or disposition was limited to the purpose of education and maintenance of the children. The construction that he had unlimited power of

sale and disposition of the land devised would wholly defeat the intent of the will, and is not sustained by its language. .

2. The land devised was trust property. It could not be validly disposed of except for the purposes of the education and maintenance of the children. The appellees had full notice of the trust character of the land and of the powers of the executor.

*J. D. Eads* and *O. A. Lucket, Jr.*, for the appellees.

1. We contend that the testatrix gave the appellant unlimited power to dispose of the property bequeathed, whenever he thought it advisable so to do, and as a matter of trust and confidence requested him to have an eye to the support and education of the children. His power of disposition is not restricted by the latter clause of the grant. *Yates* v. *Clark*, 56 Miss. 215.

2. Under the power to sell and dispose of, Stokes had the undoubted authority to mortgage. The words " dispose of" include any mode by which the title may be transmitted from one person to another. *Meacham* v. *Edmonson*, 54 Miss. 752 ; Redf. on Wills, 567 ; Perry on Tr. 780 ; 4 Kent's Comm. 331 ; Hill on Tr. 742.

COOPER, J., delivered the opinion of the court.

By her will Mrs. A. P. Stokes gave her lands to her children, and conferred upon her husband, M. M. Stokes, power to sell the same, in the following words : "And I hereby authorize and empower said M. M. Stokes to sell and dispose of any of the property hereby bequeathed in this will, when it shall appear to him to be advisable so to do, having an eye to the support and education of the children." After the death of Mrs. Stokes, M. M. Stokes mortgaged the land to secure the payment of an account for family supplies necessary for the support of the children, which were sold to him on the faith of the security afforded by the mortgage. The mortgagees filed this bill against the children of Mrs. A. P. Stokes to subject the

land to sale for the payment of the account. From a decree in favor of complainants this appeal is taken.

In *Sessions* v. *Bacon*, 23 Miss. 273, it is held that, under the act of 1839 relative to the power of married women over their estates, a married woman having authority to sell takes by implication the power to mortgage; and since this decision such has been the well-settled rule. The decision in that case, we think, was correct. The law had conferred upon married women capacity to take, hold, and dispose of legal estates; to make certain contracts relative thereto, which might be enforced against their separate estates by action at law as well as in equity; to sell and convey the property owned by them, their husbands joining in the deed when real estate was conveyed. The beneficial interest in the property was in the woman, and the object of the Legislature was to permit her to deal with it as owner, subject to such restrictions and limitations as the statute preserved or established to prevent improvidence or coercion. The powers conferred were given to married women as a class, and the courts, in construing the statute, looked to the policy of the law and the intention of the Legislature, as gathered from other provisions *in pari materia*, and held that the power to sell conferred on her included the power to mortgage.

We have examined a large number of the very numerous cases in which the rule as to the extent, construction, and execution of powers has been examined and explained. The fundamental principle that the donee of the power is authorized to exercise it only to the extent and in the manner specified, is recognized in all the cases; but the application of the equally well established rule that courts of equity, in determining whether or not the thing done is within the power conferred, will look to the ends and designs of the parties, and will aid defective executions of powers, has led to diverse and conflicting adjudications. In the cases of *Allan* v. *Backhouse*, 2 Ves. & Bea. 65; *Mills* v. *Banks*, 3 P. Wms. 1; *Ball* v.

*Harris*, 4 Myl. & Cr. 264; *Pennsylvania Ins. Co.* v. *Austin*, 42 Pa. St. 257; *Wayne* v. *Myddleton*, 2 Ga. 383; *Williams* v. *Woodward*, 2 Wend. 492; and *Watson* v. *James*, 15 La. An. 386, the power to mortgage has been held to be implied in powers to raise portions out of rents and profits, or to sell.

Such power has been denied in *Stone* v. *Theed*, 2 Bro. C. C. *243; *Holdenby* v. *Spofforth*, 1 Beav. 390; *Page* v. *Cooper*, 16 Beav. 400; *Devaynes* v. *Robinson*, 24 Beav. 86; *Stronghill* v. *Autrey*, 1 De G. M. & G. 635; *Shaftesbury* v. *Duchess of Marlborough*, 2 Myl. & K. 111; *Coutant* v. *Servoss*, 3 Barb. 128; *Albany* v. *Fire Ins. Co.*, 4 Comst. 9; *Cumming* v. *Williamson*, 1 Sandf. Ch. 17; *Wood* v. *Goodridge*, 6 Cush. 117; *Patapsco Guano Co.* v. *Morrison*, 2 Woods, 395; *Head, Admr.*, v. *Temple et al.*, 4 Heisk. 34; *Hubbard* v. *German Congregation*, 34 Iowa, 34; and *Bloomer* v. *Waldron*, 3 Hill, 361 (overruling *Williams* v. *Woodward*, 2 Wend. 492).

In *Stronghill* v. *Autrey*, Lord St. Leonards, after an examination of many of the English cases, said: "My own opinion is that, generally speaking, a power of sale out-and-out, or for a purpose, or with an object beyond the raising of a particular charge, does not authorize a mortgage; but that when it is for raising a particular charge, and the estate is settled or devised subject to that charge, then it may be proper, under the circumstances, to raise the money by mortgage, and the court will support it as a conditional sale — as something within the power."

A more liberal construction is made in those cases in which the person who has the power is also interested in the estate on which it is to be exercised, than in those in which the power is given to one to encumber the property of another. In the one case the power is to be liberally, in the other strictly, construed. *Sayles* v. *Freeland*, 2 Vent. 350.

*Cumming* v. *Williamson*, 1 Sandf. Ch. 17, illustrates both the principle that no other power than that delegated can be exercised, and the other principle that a substantial execution

is sufficient.    Several persons, owners of some lots of land in New York, appointed an agent and authorized him to improve the property, and to raise money for this purpose by mortgage of the lots.    The agent employed certain persons to do the work necessary on the lots, but, failing to raise money, he mortgaged the lots to the contractors to secure the debt due them.    It was held that the object intended to be accomplished had been effected, and the mortgage was valid; but one of the donors of the power was himself a mere trustee under a marriage settlement, by which he was authorized to " grant, bargain, sell, alien, and convey in fee-simple any of the property, and to invest the proceeds in stocks, etc., whenever the beneficiary minded to have it done," and it was held that this power did not authorize him to mortgage, and therefore he could not so authorize the agent who did mortgage the property; and as to the interest of the trustee under the marriage settlement the mortgage was held void.

An examination of the authorities has impressed us with the correctness of those decisions which hold that, as a general rule, mere power to sell does not include the power to mortgage.    In most of the cases in which such power has been declared, it is stated to be because a mortgage is a sale on condition.    In this State, as in many others, a mortgage is now treated at law as in equity — as a mere security for a debt.    The legal estate can only be used for the purpose of enforcing the payment of the debt secured.    The words of the testatrix conferring the power on her husband are, to " sell and dispose of" the property, and evidence, we think, an intention on her part simply to authorize a conversion of the property into money by an out-and-out sale; and under this power the husband was not authorized to execute the mortgage.

The decree is reversed and bill dismissed.